## No. 13,851.

ANTONIO PALMISANO AND WIFE vs. NEW ORLEANS CITY RAIL ROAD COMPANY.

### SYLLABUS.

1. Where urchins have been stealing rides by hanging on to the rear end of a gravel train on the street of a city, the employee in charge of the train, who has in vain tried to make them desist by warnings and threats, is entirely justified in catching hold of one of them and lecturing him.
2. If the employee's lecture has been temperate, and he has not rough used the boy, but has merely held him, and no longer than was necessary for the purpose of the lecture, he, or his employer, is not responsible if the boy, a

child eight years lacking three months old, on being turned loose, runs blindly in a direction converging with that of a coming car and collides with the car and is injured.

APPEAL from the Civil District Court, Parish of Orleans—
King, J.

*Boatner, Dodds & Boatner,* for Plaintiff, Appellee.

*Denegre, Blair & Denegre,* for Defendant, Appellant.

The opinion of the Court was delivered by
PROVOSTY, J.  Salvator Palmisano, a boy, seven years and nine months old, and two other boys, were stealing a ride by hanging on to the rear end of a gravel car drawn by an electric street car on defendant's road, in the City of New Orleans. The motorman of the traction car, who had been considerably annoyed by the like conduct of these and other boys, as his train went back and forth that day, conceived the plan of capturing one of the boys to lecture him, and in execution of that plan turned off the power from his car, put on the brake and beckoned to the conductor to come and take his place, and, when the car was about to come to a stop, slipped off and crouched, and as the rear end of the gravel car reached him, caught hold of the Palmisano boy. He stood with him between the rails of the track up which the gravel car had just passed and lectured him, holding him with one hand and shaking a finger of the other hand at him the while, and then turned him loose.

What he told the boy was this:

"Look here, young fellow, you have been jumping on this car every time you get a chance, and I have a good mind to have you arrested. Go and tell all your playmates the first one I catch on this car I am going to lock him up."

Alongside this track was another track, the two tracks being four feet three inches apart; on this other track an electric street car was coming. The boy, as soon as set free, scampered off, running towards his home, in the direction opposite to that in which the gravel car had gone and the same as that in which the car on the other track was coming. His course tended to converge with that of the coming car. The bystanders and the motorman of the coming car seeing the danger

of a collision hallooed at him, but too late; he came in contact with the side of the car just aft of the front platform; was thrown down, and his left foot crushed, necessitating amputation just above the ankle.

How far the spot where the motorman stood when he held the boy was from the spot of the collision, and precisely in what direction the boy started to run when he was released, and, at that exact moment, how far off was the down-coming car—these are the points on which the testimony conflicts. This testimony cannot be reconciled, and the analysing of it would serve no useful purpose. The efforts of plaintiff have tended to abbreviate the distances so as to bring the act of the motorman and the accident in closer relation, and those of the defendant have tended to the contrary, so as to give greater scope to the agency of the boy; and with the same ends in view the plaintiff would have the course of the boy as direct across the course of the car as possible, and defendant the contrary. The boy ran far enough to give time to the bystanders and to the motorman of the descending car to halloo at him, and to hope that there was yet time for him to change his course; this shows that mere distance and time are not controlling elements, or even necessarily important elements in the problem.

The view we take of the case is that the descending car was blameless, as plaintiff admits; and that the motorman of the traction car did nothing but his duty, and did not do it in an improper manner.

The theory of the plaintiff is that the child was so frightened by the acts of the motorman that for the time being he had lost his wits, and that in a dazed and bewildered condition he instinctively made for home, his course thereto lying across the path of the car, and that the motorman, by detaining the child until the down-coming car was close and the danger from it imminent, and then suddenly turning him loose, in the face of the car, as it were, was guilty of negligence.

If it be true that the child was so frightened as to lose his wits, is the motorman responsible, when he did no more to him than what was the proper thing to do? Had he exercised undue severity, either in act or language, then might some fault attach to him, but he simply caught and held the child—admittedly the proper thing to do—and lectured him with moderation—again the proper thing to do. We do not see how fault could attach to him on that score.

To say that he should have held the child longer than was necessary for the purpose of the lecture, or that he should have carried him away from a place so near to a track on which an electric car was either going to pass or in the act of passing, is to look at the situation from the standpoint of what has happened and not from the standpoint of what, under the circumstances, was likely to happen; or of what the motorman, under the circumstances, had reasonable grounds for supporing might happen. Here was a street urchin who that very day had been getting on and off this gravel car every time it sped by; was the motorman to suppose for a single instant that this boy, who had been accomplishing these car-riding feats all day, would be likely to run into a passing car if turned loose near a car track? So far as the impressionability or timidity of the boy is concerned, the motorman had the perfect right to deal with him as with any other street gamin caught in the same way; and the average street gamin is not usually bereft of his wits by being held without violence and being told that future punishment shall be visited on him in case he renew his offense. By continuing to catch on to this car and holding on to it all that day, despite the remonstrances and threats of the motorman and of the conductor, this boy had made full proof of his possessing the usual assurance and brazenness of the street gamin.

That the boy forgot himself, is clear, and that the act of the motorman contributed to cause the forgetfulness is also clear; but those acts were links in the chain of events, and were themselves brought on as the legitimate or natural consequences of the fault of the boy in catching on to the car, and of the fault of the parents of the boy in letting him indulge in that dangerous amusement. By the way, the house of the parent was close by, facing on the same street, so that they had had a full opportunity that day of witnessing the boy's dangerous pastime.

We cannot hold defendant responsible.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be set aside and that the plaintiff's suit be dismissed, with costs in both courts.

BREAUX, J., concurs in the decree.

Rehearing refused.